## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

GOP, LLC, on behalf of itself and all
others similarly situated,

          Plaintiff,

v.

Merit Energy Company, LLC,

          Defendant.

Case No. CIV-22-278-JDR-JAR

---

### PLAINTIFF'S UNOPPOSED MOTION
### TO CERTIFY CLASS FOR SETTLEMENT PURPOSES, TO
### PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT,
### TO APPROVE THE FORM AND MANNER OF NOTICE, AND TO SET A
### DATE FOR A FINAL FAIRNESS HEARING

---

Randy C. Smith, OBA #21824
RANDY C. SMITH AND ASSOCIATES
One Leadership Square, Suite 1310
211 North Robinson Ave.
Oklahoma City, OK 73102
Telephone (405) 212-2786
Facsimile (405) 232-6515
randy@rcsmithlaw.com

–and–

David R. Gleason, OBA #31066
Moricoli Kellogg & Gleason, P.C.
211 N. Robinson
One Leadership Square, St. 1350
Oklahoma City, Oklahoma 73102
Telephone: (405) 235–3357
Facsimile: (405) 232–6515
dgleason@moricoli.com

**COUNSEL FOR PLAINTIFF**

# TABLE OF CONTENTS

Table of Contents ................................................................................................. ii

Table of Authorities ............................................................................................ iii

Introduction ........................................................................................................ 6

Summary of the Litigation .................................................................................. 7

Argument & Authority ........................................................................................ 8

A. The Court Should Certify the Settlement Class for Settlement Purposes ................. 8

1.    Numerosity ............................................................................................... 9

2.    Commonality ........................................................................................... 10

3.    Typicality ................................................................................................ 11

4.    Adequacy of Representation .................................................................... 12

5.    Predominance .......................................................................................... 13

6.    Superiority ............................................................................................... 14

B. The Court Should Grant Preliminary Approval of the Proposed Settlement .......... 15

1.    Plaintiff and Its Counsel Have Adequately Represented
      the Settlement Class ................................................................................. 16

2.    The Proposed Settlement Was Negotiated at Arm's Length ....................... 17

3.    The Relief Provided for the Class Is Adequate,
      Taking into Account: ............................................................................... 19

i.    The Costs, Risks, and Delay of Trial and Appeal .................................. 19

ii.   The Effectiveness of Any Proposed Method of Distributing Relief to the
      Class, Including the Method of Processing Class Members' Claims .... 19

iii.  The Terms of Any Proposed Award of Attorneys'
      Fees, Including Timing of Payment ....................................................... 21

iv.   Any Agreement Required to be Identified under
      Rule 23(e)(3) .......................................................................................... 21

4.    The Settlement Treats Class Members Equitably Relative to
      Each Other .............................................................................................. 21

C. The Court Should Preliminarily Approve the Proposed Notice
   of Settlement to the Settlement Class ................................................................. 22

D. Appointment of Kroll Settlement Administration as Settlement
   Administrator is Proper .................................................................................... 24

E. Appointment of  Western Alliance Bank as Escrow Agent is Proper ..................... 24

Conclusion ......................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Fed. Power Comm'n,*
465 F.2d 1350 (10th Cir. 1972) .......................................................................... 15

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.,*
275 F.R.D. 325 (D. Kan. 2011) ........................................................................... 14

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
167 F. Supp. 2d 1216 (D. Colo. 2001) ................................................................ 15

*CGC Holding Co., LLC v. Hutchens,*
773 F.3d 1076 (10th Cir. 2014)............................................................................13

*Cline v. Sunoco, Inc. (R&M),*
333 F.R.D. 676 (E.D. Okla. 2019)...................................................................9, 11

*D'Amato v. Deutsch Bank,*
236 F.3d 78 (2d Cir. 2001).................................................................................. 18

*Deitrich v. Enerfin Resources I Limited Partnership, et al.,*
No. 20-CV-084-KEW (E.D. Okla. 2022) ........................................................... 20

*DG v. Devaughn,*
594 F.3d 1188 (10th Cir. 2010)..............................................................................8

*Horn v. Associated Wholesale Grocers, Inc.,*
555 F.2d 270 (10th Cir. 1977) .............................................................................. 9

*In re Motor Fuel Temperature Sales Practices Litig.,*
271 F.R.D. 263 (D. Kan. 2010)..................................................................8, 14-16

*In re Telik, Inc. Sec. Litig.,*
576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................. 18

*In re Urethane Antitrust Litig.,*
768 F.3d 1245 (10th Cir. 2014) ........................................................................... 13

*Lucas v. Kmart Corp.,*
234 F.R.D. 688 (D. Colo. 2006) ..............................................................15, 19, 22

*McKnight Realty Co. v. Bravo Arkoma, LLC,*
No. 20-CV-428-KEW (E.D. Okla. 2022) ........................................................... 20

*McNeill v. Citation Oil & Gas Corp.,*
No. 17-CIV-121-RAW (E.D. Okla. 2019)........................................................... 20

*Milonas v. Williams,*
691 F.2d 931 (10th Cir.1982)...............................................................................10

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306, 314 (1950)...................................................................................... 22

*Reed v. GM Corp.*,
703 F.2d 170 (5th Cir. 1983) ....................................................... 17

*Reirdon v. XTO Energy Inc.*,
No. 6:16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018).................................. 10

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180, 1188–89 (10th Cir. 2002) ................................................ 12

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
749 F.2d 1451 (10th Cir. 1984) ............................................................ 15

*Tennille v. Western Union Co.*,
785 F.3d 422 (10th Cir. 2015) ............................................................... 8

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)……………………………………………………………………10, 13

*Wilkerson v. Martin Marietta Corp.*,
17 F.R.D. 273 (D. Colo. 1997) ............................................................. 18

**Statutes**
OKLA. STAT. tit. 52, § 570.10............................................................... *passim*

**Rules**
FED. R. CIV. P. 23 ..................................................................... *passim*

**Secondary Sources**
Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10 (5th ed. 2011) ............... 10

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004).......................... 15

## INTRODUCTION

After almost two years of litigation, Plaintiff has obtained an outstanding recovery for the Settlement Class. Specifically, Plaintiff has reached a settlement worth $3.5 million in cash for Plaintiff's class claims for statutory interest owed on late payments of oil-and-gas proceeds under Oklahoma law. Additionally, Plaintiff has obtained a substantial future benefit for the Settlement Class by obtaining an agreement from Merit Energy Company, LLC ("Defendant") to implement policies and procedures to automatically remit interest to the Settlement Class in the future without awaiting a demand pursuant to the requirements of the Production Revenue Standards Act ("PRSA"), OKLA. STAT. tit. 52, § 570.10.

Plaintiff now respectfully requests that the Court preliminarily approve the class settlement. Specifically, through this Motion, Plaintiff requests the Court: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as Class Representative for the Settlement Class; (4) appoint Randy C. Smith of Randy C. Smith and Associates and David R. Gleason of Moricoli Kellogg & Gleason, P.C. as Co-Lead Class Counsel; (5) approve the form and manner of the proposed Notice; (6) appoint a Settlement Administrator; (7) appoint an Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiff.[1]  Plaintiff and Defendant have agreed to the form of the Preliminary Approval

---

[1] Unless otherwise defined herein, Plaintiff incorporates by reference the defined terms contained in the Settlement Agreement. *See* **Ex. 1**.

Order, which is Exhibit 1 to the attached Settlement Agreement (**Ex. 1**) and which Plaintiff will submit to the Court contemporaneously with the filing of this motion.

## SUMMARY OF THE LITIGATION

Plaintiff initiated this case on September 30, 2022, with the filing of the Complaint, in which Plaintiff alleged that Defendant violated the PRSA by failing to remit interest for payments of oil and gas proceeds made outside the statutory deadlines in the PRSA. *See* Doc. 1. Defendant filed its Answer to Complaint on November 2, 2022. *See* Doc. 9.  The Court entered the Class Certification Scheduling Order on March 15, 2023, and an Amended Scheduling Order on September 13, 2023. *See* Docs. 19 and 23.

After the entry of the Scheduling Order (Doc. 19), Plaintiff promptly issued discovery requests to Defendant. In addition to responding to written discovery requests, Defendant produced large amounts of data and information related to the claims in this case.  Plaintiff and Defendant each retained expert witnesses, and expert reports were exchanged.   The parties deposed each other's respective expert witnesses.  Plaintiff filed its Motion to Certify Class on March 1, 2024.  *See* Doc. 24.  The parties engaged in a formal mediation with Brad Gungoll, mediator, on June 19, 2024.  *See* **Ex. 2**, Dec. of Mediator Bradley A. Gungoll.  The parties reached an agreement at mediation and have since worked to memorialize their agreement into a formal settlement agreement, which they have now done.

## ARGUMENT & AUTHORITY

### A.        The Court Should Certify the Settlement Class for Settlement Purposes

In reviewing a proposed settlement for a putative class, the court determines whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Tennille v.*

*Western Union Co.*, 785 F.3d 422. 430 (10th Cir. 2015). Rule 23 examines four factors at class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Further, Rule 23(b) examines whether common questions predominate the dispute and whether the class action is superior to other methods.

District courts exercise "considerable discretion" in making class-certification decisions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling "if it applies the proper Rule 23 standard and its 'decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand.'" *Id.* (citation omitted). In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Plaintiff and Defendant have stipulated to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiff as class representative; and (3) the appointment of Randy Smith of Randy C. Smith and Associates and David R. Gleason of Moricoli Kellogg & Gleason, P.C. as Co-Lead Class Counsel for the Settlement Class. *See* **Ex. 1**, Settlement Agreement at 3. Accordingly, Plaintiff moves the Court to certify the Settlement Class consisting of:

> All non-excluded persons or entities who during the Claim Period: (1) received an Untimely Payment from Merit for oil and gas proceeds from Oklahoma wells, or on whose behalf an Untimely Payment was sent as unclaimed property to a government entity by Merit; and (2) whose proceeds did not include the statutory interest required by the PRSA.
>
> Excluded from the Class are: (1) Merit, its affiliates, predecessors, and employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (3) Publicly traded oil and gas companies and their affiliates

and subsidiaries; (4) any Indian Tribe as defined at 30 U.S.C. § 1702(4) or Indian allotee as defined at 30 U.S.C. § 1702(2); (5) any officers of the Court; (6) persons previously paid interest by Merit.

"Untimely Payment" means a payment of proceeds from the sale of oil or gas production produced from an Oklahoma well after the statutory periods identified in Okla. Stat. tit. 52, § 570.10(B)(1) or (2). Untimely Payments do not include: (a) payments of proceeds equal to or less than $25.00; (b) prior period adjustments; (c) payments made on or before September 29, 2017, or on or after May 1, 2024; and (d) joint interest billing netted amounts.

The "Claim Period" means checks or payments made or issued by Merit Energy Company, LLC, dated between September 30, 2017, through April 30, 2024, subject to the terms of the Settlement Agreement regarding Released Claims.

*See id.* at 11–12. Certification of the Settlement Class for settlement purposes furthers the interests of Class Members and Defendant by allowing this case to be settled on a class-wide basis. The proposed Settlement Class satisfies the requirements of Rule 23, and thus this Court should certify the Settlement Class.

1.        **Numerosity**

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding a class as small as 46 sufficient). Here, the Settlement Class consists of thousands of owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) (appeal pending in 10th Cir. Case: 23-7090) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1)."). Plaintiff has identified nearly 35,000 potential Class Members. Further, Defendant

has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 11-12. Numerosity is satisfied.

###   2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Even "'[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982). Plaintiff need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10, at 272-73 (5th ed. 2011).

This Court has certified several similar class actions, finding common issues existed. *See, e.g.*, *Cowan, et al., v. Devon Energy Corporation, et al.,* No. 22-CV-220-JAR, Doc. 21 (E.D. Okla. Sept. 21, 2022) (preliminarily approving PRSA late-payment class for settlement purposes); *Dinsmore, et al. v. Phillips 66 Co.*, No. 22-CV-44-JFH, Doc. 27 (E.D. Okla. June 20, 2023) (same); *see also Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW, Doc. 152 (E.D. Okla. Jan. 11, 2023) (same); *see also Allen, et al. v. Apache Corp.*, No. 22-CV-00063-JAR, Doc. 23 (E.D. Okla. Aug. 1, 2022) (same); *Dasa Inv., Inc. v. EnerVest Operating, L.L.C.*, Case No. 6:18-CIV-083-SPS, 2019 WL 8163862 (E.D. Okla. Oct. 30, 2019) (same); *Reirdon v. XTO Energy Inc.*, Case No. 6:16- cv-00087-KEW, Doc. 122 (E.D. Okla. Jan. 29, 2018) (same). Even in the context of contested class certification, the Eastern District of Oklahoma recently

certified a class for identical claims for statutory interest under the PRSA. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. 2019) (appeal pending in 10th Cir. Case: 23-7090).

In addition, other federal courts in Oklahoma have certified several similar class actions, finding common issues existed. *Rice v. Burlington Res. & Gas Co. LP*, No. 20-CV-431-GKF-SH, Doc. 66 (N.D. Okla. Aug. 25, 2023); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ, Doc. 61 (N.D. Okla. Jan. 25, 2021) (preliminarily approving, *inter alia*, late-payment class for settlement purposes); *Pau-per Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ, Doc. 56 (N.D. Okla. Sept. 3, 2021) (same).

Plaintiff's PRSA claim involves questions of law and fact that can be answered uniformly for the Settlement Class using common evidence. The PRSA claims turn on whether Defendant paid owners statutory interest on payments of oil-and-gas proceeds made outside of the timeframes established by the PRSA. Plaintiff alleges that Defendant's alleged uniform practice of first requiring a demand from owners for statutory interest violates the PRSA, and that presents a common question of fact and law. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 14.

### 3.      Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." But "'[e]very member of the class need not be in a situation identical to that of the named plaintiff'" to meet the typicality requirement. *DG*, 594 F.3d at 1195 (citation omitted). Rather, "[p]rovided the claims of Named Plaintiffs and class

members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

Plaintiff's claim is typical of the Settlement Class' claims because Defendant allegedly treated all owners in the same manner for purposes of paying statutory interest under the PRSA. Put differently, the same legal theories and issues of fact underlie the claims of the Settlement Class and Plaintiff because Defendant allegedly treated them uniformly. Thus, all Class Members who received a late payment under the PRSA suffered the same injury arising out of similar facts. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 14. Plaintiff satisfies typicality.

### 4. Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1) neither plaintiff nor its counsel has interests in conflict with the interests of other class members; and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002). No conflicts exist between Plaintiff or its counsel and other members of the Settlement Class. To the contrary, Plaintiff shares the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiff has done so, vigorously prosecuting this case through qualified counsel. Plaintiff's Counsel is experienced in class actions related to oil-and-gas payment claims under Oklahoma law. Plaintiff's Counsel have been found adequate and appointed as co-lead or additional class counsel in multiple previous class actions, including a class action based upon

PRSA claims in this Court.[2] Moreover, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 12. Plaintiff and its counsel satisfy adequacy of representation.

### 5.    Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "'The predominance inquiry tests whether proposed Class are sufficiently cohesive to warrant adjudication by representation'" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Ty- son Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CGC Holding Co., LLC v. Hutchens, 773 F.3d 1076, 1087* (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized

---

[2]*See Hay Creek Royalties, LLC v. Roan Resources. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021) (David Gleason appointed additional class counsel; $20.2 million approved class settlement; subclasses included improper deductions and PRSA late payments*); Hay Creek Royalties LLC v. Mewbourne Oil Company*, Case No. CIV-20-1199-F (W.D. Okla. 2022); (David Gleason appointed additional class counsel, $3.95 million settlement approved for PRSA late payments); *Kenny Wayne Rounds and Randy Carl Smith v. Fourpoint Energy, LLC*, Case No. CIV-20-00052-P (W.D. Okla. 2022) (David Gleason appointed additional class counsel; $3.65 million class settlement approved; subclasses included off-lease fuel use and PRSA late payments); *Suzanne Broadbent v. Presidio Petroleum LLC*, Case No. CV-2022-15, District Court of Roger Mills County, Oklahoma (David Gleason and Randy Smith appointed co-lead class counsel; settlement approved of PRSA late payment claims); *OGP, LLC v. Contango Resources, LLC,* 22-CV-382-JFH-JFJ, (N.D. Okla) (Randy Smith appointed as co-lead class counsel; $8.1 million settlement for PRSA interest approved); *Wake Energy, LLC, v. Canvas Energy, LLC, f/k/a Chaparral Energy, LLC,* CIV-22-822-G, (W.D. Okla.) (Randy Smith; preliminary approval of $4.5 million settlement for PRSA interest claims pending); *Wake Energy, LLC v. Mustang Fuel Corporation and Mustang Gas Products,* Case No. 24-cv-364-GLJ, (E.D. Okla.) (Randy Smith appointed Co-Lead Class Counsel; preliminary approval of settlement for $2.1 million in PRSA interest claims granted; final fairness hearing set for October 2, 2024).

questions."). Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, Plaintiff and the Settlement Class' claims stem from a "common nucleus of operative facts," common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

Again, Plaintiff alleges that Defendant systemically improperly held statutory interest owed under the PRSA by requiring owners to first demand payment for statutory interest. This alleged common conduct gave rise to each Class Member's claims, resulting in a sufficiently cohesive Settlement Class to warrant adjudication by representation. Because every Class Member's claims arise from Defendant's alleged systematic and uniform statutory interest calculation and payment methodology, common questions predominate over any individual issues. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 14. Plaintiff satisfies predominance.

## 6.    Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Motor Fuel*, 271 F.R.D. at 269.

Superiority is easily satisfied here, and concentrating the Litigation in this forum is desirable. There are no anticipated difficulties managing this case as a class action for settlement purposes only. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 14. This is an obvious instance in which the class action is the superior method of fair and efficient adjudication.

## B.    The Court Should Grant Preliminary Approval of the Proposed Settlement

Courts strongly favor settlement as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) guides the Court to approve a class action settlement when Rule 23's requirements are met and when the settlement is fair to the class members. Proposed class action settlements follow a two-step process. *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). **First**, the Court conducts preliminary analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*,

234 F.R.D. 688, 693 (D. Colo. 2006). **Second**, after the Court preliminarily approves the settlement, the class is provided notice and an opportunity to be heard at a final fairness hearing, at which point the Court considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675.

In this Motion, Plaintiff is asking the Court to undertake that first step. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel*, 258 F.R.D. at 675 (internal quotations omitted). While "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675–76.

Rule 23 provides clear factors for the Court to review at this first step. Specifically, the Court should consider:

(A)     the class representative and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

> (i)     the costs, risks, and delay of trial and appeal;

> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;

> (iii)     the terms of any proposed award of attorney's fees, including timing of payment;

> (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement checks each of these boxes.

### 1. Plaintiff and Its Counsel Have Adequately Represented the Settlement Class

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee notes, 2018. Plaintiff's Counsel has engaged in significant discovery efforts with Defendant throughout the Litigation. Plaintiff's Counsel has obtained, reviewed, and analyzed voluminous data, statutory interest payments, pay detail, and accounting information for Oklahoma owners. Further, Plaintiff and its counsel engaged an accounting expert to review the information produced by Defendant. For months, counsel for Plaintiff worked with its accounting expert in an effort to fully understand the accounting data provided by Defendant and develop a damages model. Plaintiff's counsel also deposed Defendant's expert to understand Defendant's defenses and contentions and to prepare for Plaintiff's class certification motion.   Subsequent to Plaintiff's Motion for Class Certification, there were significant additional exchanges of information and negotiations between the parties leading up to the date of mediation.

In addition, Plaintiff's Counsel has served as counsel in several prior individual and class action settlements involving the exact PRSA claims at issue in this case and is involved in several other currently pending putative class actions for the exact PRSA claims at issue in this case. The efforts of Plaintiff's Counsel in other cases have resulted in a collection of significant information laying the groundwork for the favorable Settlement reached in this case. The Settlement reached in this case with Defendant is on par with the proportionate settlement values reached in similar PRSA late-payment class actions. Finally, Plaintiff has remained actively involved in this litigation since filing and has thus adequately represented the Settlement Class.

##### 2.    The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Plaintiff's Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with its expert. The Settlement is the product of arm's-length negotiations between Plaintiff and Defendant and their experienced counsel at a point when Plaintiff and Defendant possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.

Here, the Settlement is the product of extensive arm's-length negotiations between the Parties' experienced counsel at a mediation presided over by experienced mediator Bradley Gungoll. *See* Ex. 2, Dec. of Mediator Bradley A. Gungoll.  The use of a formal settlement process supports the conclusion that the Settlement was fairly and honestly negotiated. *See Ashley v. Reg'l Transp. Dist.*, No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months). And, the assistance of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008). Here the parties engaged an experienced mediator whose involvement helped them reach a settlement. The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. This factor supports preliminary approval.

**3.      The Relief Provided for the Class Is Adequate, Taking into Account:**

 **(i)  *The Costs, Risks, and Delay of Trial and Appeal***

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the parties were able to ultimately agree to a settlement amount, they still vehemently disagree on numerous factual and legal issues. Defendant denies any wrongdoing giving rise to liability under the PRSA. *See* **Ex. 1**, Settlement Agreement at 3. Defendant has entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation. *See id.* Plaintiff is optimistic about its chances of success on class certification and at trial but recognizes there are a number of significant obstacles it would still have to overcome to achieve success on behalf of the Settlement Class. Put simply, serious questions of law and fact are still in dispute. Importantly, the meaningful Settlement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

 **(ii)  *The Effectiveness of Any Proposed Method of Distributing Relief to the Classes, Including the Method of Processing Class Members' Claims***

The proposed distribution method for this common-fund Settlement has been highly effective in prior cases. Pursuant to the Settlement Agreement, Defendant will provide Plaintiff's Counsel their payment history data for payments made by Defendant for wells

located in Oklahoma, including the names, last known addresses, and tax identification numbers of persons or entities receiving those payments. *See* **Ex. 1**, Settlement Agreement at 15. The Settlement Administrator will make reasonable efforts to: (a) verify the last-known address of potential Class Members provided by Defendant and (b) locate current addresses of any potential Class Member for whom Defendant has not provided addresses. *Id* at 14–15.

Subject to the Court's approval, Plaintiff's Counsel will allocate the Net Settlement Fund to individual Class Members who are participating in the settlement fairly and equitably, with due regard for the production date, the date the underlying payment was made, the amount of the underlying payment or the time periods set forth in the PRSA.[3] *See* **Ex. 1**, Settlement Agreement at 24–25.

The Net Settlement Fund will be distributed by the Settlement Administrator as soon as reasonably possible after final approval has been obtained for the Settlement and any appeals are exhausted. The Settlement Agreement specifies deadlines for distributing the Net Settlement Fund. *See* **Ex. 1**, Settlement Agreement at 27.  This distribution method has been approved and utilized in other late-payment class-action settlements. *See, e.g.*, *Cowan, et al., v. Devon Energy Corporation, et al.,* No. 22-CV-220-JAR, Doc. 21 (E.D. Okla. 2022), *Rice v. Burlington Res. & Gas Co. LP*, No. 20-CV-431-GKF-SH, Doc. 66 (N.D. Okla. Aug. 25, 2023)*, Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla. 2021); *Deitrich v. Enerfin Resources I Limited Partnership, et al.*, No. 20-CV-084-KEW (E.D. Okla. 2022); *McKnight Realty Co. v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla. 2022);

---

[3] The Settlement Agreement also provides for a $5.00 *de minimus* threshold for payments in order to preserve the overall Net Settlement Fund from distribution costs of claims that likely exceed the value of those claims.

*McNeill v. Citation Oil & Gas Corp.*, No. 17-CIV-121-RAW (E.D. Okla. 2019); *Wake Energy, LLC v. EOG Res., Inc.*, No. 20-CV-183-ABJ (D. Wyo. 2022);.

Importantly, as opposed to many other court-approved class action settlements in federal court, the Settlement Agreement doesn't require Class Members to submit claim forms in order to receive their share of the Net Settlement Fund. On the contrary, all Class Members who do not affirmatively opt-out of the Settlement will automatically receive a check without the burden of submitting a claim form. *See* **Ex. 1**, Settlement Agreement at 28.

### (iii)    *The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment*

Under the terms of the Settlement Agreement, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees no later than forty-five days before the Final Approval Hearing. *See* **Ex. 1**, Settlement Agreement at 16–17. Plaintiff's Counsel anticipates that they will seek a fee award of forty percent of the Gross Settlement Fund. Plaintiff's Counsel has obtained an excellent recovery for Class Members in the form of a $3.5 million cash payment, plus future benefits. Under the Settlement Agreement, Plaintiff's Attorneys' Fees are to be paid to Plaintiff's Counsel from the Gross Settlement Fund, to the extent practicable through reasonably diligent efforts by the Escrow Agent, one (1) day following the date the Judgment becomes Final and Non-appealable. *See* **Ex. 1**, Settlement Agreement at 32-33.

### (iv)    *Any Agreement Required to be Identified under Rule 23e)(3)*

The only agreement entered into by the parties  regarding this settlement is the Settlement Agreement which is submitted in full at Exhibit  1.

**4.      The Settlement Treats Class Members Equitably Relative to Each Other**

The Settlement treats Class Members equitably relative to each other. All Class Members identified will receive their equitable share of the Net Settlement Fund based on the amount of statutory interest allegedly owed on the original underlying payment that allegedly occurred outside the time periods required by the PRSA, with due regard for the production date, the date the underlying payment was made, the amount of the underlying payment, and the time periods set forth in the PRSA. **Ex. 1**, Settlement Agreement at 24–25.

Because all four factors weigh in favor of the Settlement here, Plaintiff respectfully requests the Court grant preliminary approval of the Settlement.

**C.      The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Plaintiff has submitted to the Court for approval the Notice of Settlement, which includes a postcard notice, a notice for publication on the settlement website, and a summary notice that will be published in various newspapers. The Notice of Settlement documents are attached to

the Settlement Agreement as Exhibits 3–5. As set forth in the Settlement Agreement, Plaintiff and Defendant have agreed that, no later than sixty (60) days after entry of the Preliminary Approval Order, or at such time as is ordered by the Court, the Court-appointed Settlement Administrator shall begin disseminating the Notice by sending a copy of the postcard Notice (Settlement Agreement, Exhibit 3) via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort to do so and also post the Notice (Settlement Agreement, Exhibit 4) on an Internet website dedicated to the Settlement. **Ex. 1**, Settlement Agreement at 15-16. Plaintiff and Defendant further agree that the Settlement Administrator also shall publish (or cause to be published) the Notice (Settlement Agreement, Exhibit 5) one time in each of the following newspapers: (a) *The Oklahoman*, a paper of general circulation in Oklahoma; and (b) *The Tulsa World*, a paper of general circulation in Oklahoma. After mailing the postcard Notice of Settlement and continuing through the date of the Final Fairness Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notice of Settlement; (b) the First Amended Complaint; (c) this Settlement Agreement; (d) the Preliminary Approval Order; and (e) other publicly filed documents related to the Settlement. *Id.* at 15-16. The post-card and publication notices direct Class Members to this website for additional information. And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement.

Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiff's Counsel's intent to request attorneys' fees, reimbursement of expenses, and a case contribution award; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a toll-free number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner through which they will be delivered and communicated to the Settlement Class.

### D.    Appointment of Kroll Settlement Administration as Settlement Administrator Is Proper

To accomplish the processing of requests for exclusion and the distribution of the Net Settlement Fund in accordance with a Court-approved plan of allocation and distribution, Plaintiff respectfully requests the Court appoint Kroll Settlement Administration ("Kroll") as the Settlement Administrator. Kroll is a leading class action administration company that has handled many complex class action settlements.[4] Further, under the terms of the Settlement Agreement, Plaintiff, Defendant, and their Counsel will work directly with the Settlement

---

[4] More information about Kroll can be found on its website at: www.kroll.com.

Administrator for much of the notice, administration, and distribution processes. Accordingly, Plaintiff respectfully requests the Court appoint Kroll as the Settlement Administrator.

### E.  Appointment of Western Alliance Bank as Escrow Agent is Proper

Additionally, Plaintiff respectfully requests the Court appoint Western Alliance Bank as the Escrow Agent. Pursuant to the terms of the Settlement Agreement, the parties mutually agreed upon Western Alliance Bank to carry out the duties assigned to the Escrow Agent. **Ex. 1**, Settlement Agreement at 6.

### CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court enter the agreed proposed Preliminary Approval Order, attached as **Exhibit 1** to the Settlement Agreement (**Ex. 1** hereto), which will: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as Class Representative for the Settlement Class; (4) appoint Randy Smith of Randy C. Smith and Associates and David R. Gleason of Moricoli Kellogg & Gleason, P.C. as Co-Lead Class Counsel; (5) approve the form and manner of the proposed Notice; (6) appoint Kroll Settlement Administration as Settlement Administrator; (7) appoint Kroll Settlement Administration as Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiff.

Respectfully submitted,

By:    */s/ Randy C. Smith*_____
          Randy C. Smith, OBA #21824
          RANDY C. SMITH AND ASSOCIATES
          One Leadership Square, Suite 1310
          211 North Robinson Ave.
          Oklahoma City, OK 73102
          Telephone (405) 212-2786
          Facsimile (405) 232-6515
          randy@rcsmithlaw.com

          *—and—*

          David R. Gleason, OBA #31066
          Moricoli Kellogg & Gleason, P.C.
          One Leadership Square, Suite 1350
          211 N. Robinson Ave.
          Oklahoma City, OK 73102
          Telephone: 405.235-3357
          Facsimile: 405.232.6515
          dgleason@moricoli.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/ Randy C. Smith*